**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Willard W. McDowell, | ) No. CV-06-2679-PHX-FJM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Kevin Scott Paykel, et al., | ) |
| Defendants. | ) |

This is a breach of contract case involving the sale of an oceanfront villa located in Puerto Vallarta, Mexico. The owner of the villa, defendant Kevin Paykel, a Wisconsin resident, entered into a contract with plaintiff Willard McDowell, an Arizona resident, pursuant to which McDowell was to purchase the property. McDowell filed the present action when Paykel allegedly failed to transfer the property as required by the contract. We now have before us Paykel's motion to dismiss for lack of personal jurisdiction and improper venue (doc. 6), McDowell's response (doc. 7), and Paykel's reply (doc. 12). Based on our conclusion that we lack personal jurisdiction over Paykel, we grant the motion to dismiss.

**I**

The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). He must show that the forum state's long-arm statute provides personal jurisdiction

over the out-of-state defendant and that the exercise of jurisdiction does not violate federal constitutional principles of due process. Arizona's long-arm statute confers jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution, and we therefore proceed under the federal due process framework. See Batton v. Tennessee Farmers Mut. Ins. Co., 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987); see also Ariz. R. Civ. P. 4.2(a).

McDowell does not contend that we have general jurisdiction over Paykel–only specific jurisdiction is at issue. We employ a three-part test to determine whether the exercise of specific jurisdiction over Paykel comports with due process: "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must . . . be reasonable." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (citation omitted). If any one of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law. Peeble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006).

In cases arising out of contractual relationships, the Ninth Circuit applies the "purposeful availment" test, which "requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990). A defendant has engaged in affirmative conduct "if he has deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum." Id. at 760 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2183-84 (1985)). A "contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction." Id.; see also Burger King, 471 U.S. at 478, 105 S. Ct. at 2185 (stating that a "contract with an out-of-state party *alone* can [not] automatically establish sufficient minimum contacts in the other

1 party's home forum"). Rather, we must look to "prior negotiations and contemplated future 2 consequences, along with the terms of the contract and the parties' actual course of dealing" 3 to determine if the defendant's contacts are "*substantial*" and not merely "random, fortuitous, 4 or attenuated." Burger King Corp., 471 U.S. at 479-80, 105 S. Ct. at 2185-86 (emphasis in 5 original) (internal quotations omitted).

6 When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 7 "obligated to come forward with facts, by affidavit or otherwise, supporting personal 8 jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). Where the motion to 9 dismiss is based on written materials rather than an evidentiary hearing, the plaintiff "need 10 only make a prima facie showing of jurisdictional facts." Schwarzenegger, 374 F.3d at 800 11 (quotation omitted). "Conflicts between the parties over statements in affidavits must be 12 resolved in the plaintiff's favor" for purposes of deciding whether a prima facie case for 13 personal jurisdiction exists. Id.; see also Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 14 857, 862 (9th Cir. 2003); Dole Food, Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002).

**II**

16 McDowell contends that Paykel purposefully directed his activities toward Arizona 17 "by placing magazine advertisements soliciting offers for the subject property in magazines 18 distributed in Arizona." Response at 5. Although this argument has some superficial appeal, 19 an examination of the magazine demonstrates that this is not an accurate characterization of 20 the advertisement. See Reply, exhibit B. The *Vallarta Lifestyles* magazine, a free magazine 21 for tourists visiting Puerto Vallarta and distributed primarily in Mexico, contains a three-page 22 advertisement by Applegate Realtors and includes several small photographs of unidentified 23 homes, including Paykel's villa. Id. There is no information identifying the villa or 24 otherwise indicating that it is for sale. Paykel avers that he did not authorize Applegate 25 Realtors to use the photograph in the advertisement, but instead instructed them to find a 26 buyer without placing any advertisements. Paykel Affidavit ¶ 5. There is no evidence to 27 suggest that this magazine was circulated in Arizona, other than McDowell's vague statement 28 that he "received this magazine at [his] place of residence in Arizona." McDowell Decl. ¶

1  4. We conclude as a matter of law that this small photograph of an unidentified interior view
2  of a home, included among many other photographs of unidentified properties, is insufficient
3  to support the claim that Paykel purposefully solicited business in Arizona.

Moreover, it is not clear what function, if any, this "advertisement" served in notifying McDowell of the villa's availability. On the one hand, McDowell claims that he "became aware of the potential to purchase Mr. Paykel's property by virtue of an advertisement placed in the *Vallarta* magazine which Mr. McDowell received at his residence." Response at 2. Conversely, he avers that he "initially learned of the potential to purchase the subject property from a personal friend who was traveling in Mexico." McDowell Decl. ¶ 3. In light of these equivocal assertions, and given the absence of identifying information in the advertisement, it is implausible that McDowell "learned of the availability" of the villa through this advertisement. See McDowell Decl. ¶ 4. In any event, and notwithstanding how McDowell learned that the property was for sale, it is undisputed that McDowell initiated the first contact between the parties–Paykel did not target nor contact McDowell.

McDowell also contends that Paykel's contacts with Arizona consisted of pre-closing negotiations that took place between Paykel's lawyer, Mark Denardier, in Wisconsin and McDowell in Arizona. He claims that the parties routinely used telephone, fax, email and delivery services into the State of Arizona to negotiate the deal. Response at 2.

The Ninth Circuit has placed little significance on telephone and mail communication into a forum state as a basis for establishing a defendant's minimum contacts. In Gray, 913 F.2d at 761, the defendant seller's contacts with the forum state consisted of a few phone calls, exchange of mail, and receipt of payment. There was no evidence that the sale contemplated a continuing relationship between the plaintiff and the defendant. The court concluded that these contacts "fall in the category of 'attenuated contacts' insufficient in themselves to establish defendants have purposefully availed themselves of the benefits and protections of the forum's law." Id. The court noted as significant that the plaintiff buyer

1   had initiated the contact with defendant and solicited the transaction. Id. at 760. Similarly
2   here, it is undisputed that McDowell first contacted Paykel.
3       In Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990), the court held that
4   defendant's acceptance of payment from a California bank and mail and telephone
5   communications into California "is not the deliberate creation of a 'substantial connection'
6   with California, nor is it the promotion of business within California." Id. (citation omitted).
7   The court noted that the defendant did not solicit plaintiff's business in the forum, rather the
8   plaintiff came to the defendant in its own state. Id. See also Peterson v. Kennedy, 771 F.2d
9   1244, 1262 (9th Cir. 1985) (concluding that "ordinarily use of the mails, telephone, or other
10  international communications simply do not qualify as purposeful activity invoking the
11  benefits and protection of the [forum] state") (quotation omitted).
12      Similarly, the extent of defendant's alleged contacts in the present case is mail, phone
13  and fax communications into Arizona. There is no credible allegation that Paykel took any
14  affirmative action to promote the sale of his villa in Arizona. McDowell's allegations that
15  "[n]one of the documentation in this matter was prepared in or sent from Mexico," and that
16  the "contract at issue was prepared in Milwaukee, Wisconsin" McDowell Decl. ¶ 7, support
17  jurisdiction in Wisconsin, not Arizona. Moreover, McDowell's reliance on the fact that the
18  financing for the transaction originated in Arizona and was coordinated by an Arizona title
19  company, id. ¶ 11, in of little consequence. McDowell caused his Arizona financial
20  institution to transfer money to an escrow account maintained in Florida. The relevant
21  "contacts" in a purposeful availment analysis are those attributable to defendant's own actions
22  and not to the unilateral actions of some other party, including the plaintiff.
23      Based on the foregoing, we conclude that Paykel's contact with Arizona by way of
24  pre-closing phone calls, emails and faxes into Arizona are "attenuated contacts" that are
25  insufficient to establish that Paykel purposefully availed himself of the benefits and
26  protections of Arizona laws. McDowell has failed to make a prima facie showing of personal
27  jurisdiction.
28

1    Because McDowell's arguments fail under the first prong of the due process analysis,
2 we need not address whether the claim arose out of or resulted from Paykel's forum-related
3 activities or whether an exercise of jurisdiction is reasonable.  Peeble Beach, 453 F.3d at
4 1155.  Nor do we consider whether dismissal is also warranted on the ground of improper
5 venue.

### III

Therefore, **IT IS ORDERED GRANTING** Paykel's motion to dismiss for lack of personal jurisdiction (doc. 6).

DATED this 10th day of May, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge